TOWER & SONS *v.* UNITED STATES (No. 2119).[1]

1. ORE.

A resultant of a number of processes applied to an ore, differing greatly from the ore, is not to be classified as the ore.

2. EVIDENCE—PRESUMPTION OF CORRECTNESS OF OFFICIAL ACTIONS—COBALT, ORE, AND OXIDE—WASTE.

A powder resulting from a number of processes applied to cobalt ore was assessed under paragraph 24, tariff act of 1913, " Cobalt, oxide of." Importers protested, claiming it to be entitled to free entry under paragraph 453, " Cobalt and cobalt ore." The Board of United States General Appraisers, being of the opinion that it was classifiable under neither paragraph and that it should have been classified as " waste " under paragraph 384, affirmed, without approving, the collector's classification. Such a product of cobalt ore is not cobalt ore. Since it is shown to be a mixture of oxide of cobalt and nickel and various other substances, it is not cobalt. With proof that it contains a substantial percentage of nickel and that oxide of cobalt does not, it.can not be classified as oxide of cobalt. Being classifiable neither as assessed nor claimed, the decision of the Board of United States General Appraisers, overruling the protest, is affirmed.

United States Court of Customs Appeals, November 21, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8436 (T. D. 38720).

[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellants.
*William W. Hoppin,* Assistant Attorney General, for the United States

---

[1] T. D. 38947.

[Oral argument Oct. 28, 1921, by Mr. Tompkins and Mr. Hoppin.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Asso-
ciate Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise involved in this appeal is a rather heavy grayish black powder, having a tendency to dirty the hands if handled, not very fine in all parts, but, as one of importers' witnesses testified, fine enough so that "it might have gone through a 40-mesh sieve or thereabouts."

It was assessed by the collector under paragraph 24 of the tariff act of 1913 providing for "Cobalt, oxide of."

The importers' contention is that it is entitled to free entry under paragraph 453 of the same act providing for "Cobalt and cobalt ore."

A majority of the Board of General Appraisers, upon full consideration of the testimony of witnesses upon behalf of both sides, expert and otherwise, held that the importation was not cobalt, was not cobalt ore, and was not an oxide of cobalt. One member of the board was of opinion that it was not an oxide of cobalt, but was cobalt ore. So that the unanimous opinion of the board was that it was not an oxide of cobalt, and therefore was not dutiable as assessed.

The majority of the board concluded that the merchandise was classifiable as waste under paragraph 384 providing for "Waste not specially provided for in this section," but as importers made no claim under that paragraph, the protest was overruled and the assessment of the collector affirmed, although not approved. The member of the board who was of opinion that the article was cobalt ore, of course, held it was entitled to free entry.

From what already appears, if upon the record it shall be here determined that the importation is neither cobalt nor cobalt ore, the result must be the affirmance of the judgment below, and it is not important or necessary for us to undertake in that event to suggest the correct classification of the merchandise.

We have the unanimous finding of the Board of General Appraisers that it is not oxide of cobalt. Without discussion of the evidence, it is sufficient to say that we think it clearly supports that finding. We also are of opinion that the importation is neither cobalt nor cobalt ore.

A witness called by importers was asked to tell how the merchandise was produced. He said—

This was produced from cobalt ores which contain a considerable amount of arsenic; the ore was first roasted to eliminate that arsenic, or at least a greater part of it; it was then treated with acids whereby there was effected a concentration of the soluble components of this; certain of these soluble components

were then separated from the solution because they contained, there was some silver in the solution that had to be separated, and there remained then in solution the nickel and cobalt, and to a lesser degree a small amount of iron, arsenic, alumina, antimony, and several other things, and they were thrown down together or precipitated from this solution, and this precipitate or mud, as the workmen call it, is filtered from the liquid which remained and dried and roughly ground and put in barrels and sent away; that is how it is produced.

A chemist called by the Government as a witness testified that the article was a mixture of oxide of cobalt and nickel and various other substances, and in that connection said that oxide of cobalt, as known, did not contain any substantial percentage of nickel, while his analysis showed the article here to contain 28 per cent of oxide of nickel. Another witness for the Government, familiar with the commodity, said it would properly be termed a mixed oxide.

The theory of appellants is that an ore, as that word is used in paragraph 453, should be held to include such an intermediary product as is the merchandise here, as shown by the above-quoted testimony of their own witness, notwithstanding the fact that it is really a residuum remaining after the natural ore has been subjected to the various treatments mentioned. The witness, however, said that the merchandise was "produced from cobalt ores." To obtain it the natural ore has been roasted for the purpose of eliminating the arsenic, then subjected to an acid treatment resulting in the concentration of certain soluble components; then certain of these are separated from the rest, including a relatively large amount of silver, leaving a residuum or product that as to its constituent elements differs greatly from the ore as mined. This residuum was precipitated, filtered, dried, and ground.

We are clear that an article that has been subjected to all these treatments is not a cobalt ore in the common meaning of that term, as used in paragraph 453, and that the majority of the board was justified in so concluding upon the evidence. There is nothing in the record to justify the claim that it is cobalt, and there is no claim of commercial meaning.

The result therefore is that the importers have established that the merchandise was not correctly classified by the collector, and also have failed to establish that the classification claimed by them is correct, in which event, under the rule obtaining in such cases, the judgment of the Board of General Appraisers overruling the protest must be and it is *affirmed*.