BALFOUR, GUTHRIE & CO. *v.* UNITED STATES (No. 2704) [1]

1. CONSTRUCTION, PARAGRAPH 502, TARIFF ACT OF 1922, AIDED BY CONTEXT— "MOLASSES"—"GALLON."

For customs purposes, the gallon is the wine gallon of 231 cubic inches, and it is a liquid measure. The assessment of duty by the gallon, in paragraph 502, Tariff Act of 1922, on "molasses and sugar sirups" indicates that they are liquids; and this is the common meaning of the words.

[1] T. D. 41582.

2. CONCRETE MOLASSES—PRESUMPTION FAVORS COLLECTOR.

Molasses from which all sugar and moisture possible had been extracted, not fit for human consumption, used as cattle feed and for manufacturing alcohol and potash, invoiced as solid molasses, was classified as molasses, under paragraph 502, Tariff Act of 1922, and claimed to be either waste under paragraph 1457 or a crude vegetable substance under free list paragraph 1622. It is concrete molasses, under paragraph 501; but, in the absence of any such claim, the judgment of the board overruling the protest and holding it dutiable as molasses, by similitude, under paragraph 502, is affirmed.

United States Court of Customs Appeals, May 1, 1926

APPEAL from Board of United States General Appraisers, G. A. 9043, T. D. 41135

[Affirmed.]

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

[Oral argument March 30, 1926, by Mr. Charles D. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

SMITH, Judge, delivered the opinion of the court:

Eight hundred and six kilos of a product invoiced as solid molasses was classified by the collector of customs at the Port of San Francisco as molasses not specially provided for, and assessed for duty at $0.061625 per gallon under paragraph 502, Tariff Act of 1922, which reads as follows:

PAR. 502. Molasses and sugar sirups, not specially provided for, testing not above 48 per centum total sugars, twenty-five one-hundredths of 1 cent per gallon; testing above 48 per centum total sugars, two hundred and seventy-five one-thousandths of 1 cent additional for each per centum of total sugars and fractions of a per centum in proportion. * * *

The importers protested that the importation was dutiable either at 10 per centum ad valorem as waste under paragraph 1457 or free of duty as a crude vegetable substance under paragraph 1622 of the free list. Paragraph 1457 and paragraph 1622 of the applicable provisions of the free list read as follows:

PAR. 1457. Waste, not specially provided for, 10 per centum ad valorem.

FREE LIST

SEC. 201. That on and after the day following the passage of this act, * * * the articles mentioned in the following paragraphs, when imported into the United States * * * shall be exempt from duty: * * *

PAR. 1622. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

The Board of General Appraisers held that the merchandise was not molasses, but that, because of its similitude to molasses, it was

dutiable under paragraph 502, and overruled the protest. From the judgment of the board the importers appealed to this court.

The importation is a product which results from the making of sugar from sugar cane. Sugar cane, after it is cut and taken from the fields, is run through a series of rollers or crushers, which produces a juice containing a high percentage of sucrose or cane sugar. The boiling of the juice in vacuum pans crystallizes a percentage of the cane sugar or sucrose, thereby producing raw sugar. Some of the sucrose or cane-sugar content, however, is not crystallized by the first boiling, but is drained off in a viscous liquor known as molasses. If the molasses be rich enough in sugar, it is subjected to a boiling which yields additional crystallized sugar and a second molasses. The boiling of the second molasses may result in a further crystallization of sugar, and also a third molasses, which is used for the making of rum and alcohol, and for the manufacture of food for stock. See Molasses, Second molasses, and Third molasses, New Standard Dictionary.

The importation is a material containing sugar from which practically all moisture has been so far removed as to reduce it to a solid substance as brittle as coal, and, in appearance, resembling taffy. The testimony discloses that the importation is not fit for human consumption and is suitable for distilling purposes, the manufacture of alcohol, potash, and food for cattle. One of the witnesses for the importers testified that there was a product known as concrete molasses, and that it was produced by reducing the *original* cane juice to a solid form. That definition of concrete molasses is hardly broad enough, however, inasmuch as it appears that the term concrete when applied to products resulting from the manufacture of sugar includes the solid mass whether produced by boiling down the *original juice* of the sugar cane or by boiling down any *saccharine fluid*. See second definition "Concrete," New Standard Dictionary. Inasmuch as the article imported was not fit for human consumption, it was apparently made by expelling substantially all of the moisture from a third molasses, or from a molasses from which no more sugar fit for human consumption could be commercially extracted. Taking into consideration the common acceptation of the word "concrete" as applied to sugar products, the importation was "concrete molasses," provided for in paragraph 501.

The words "molasses" and "sirups," standing by themselves, as commonly understood and when used to designate the table product derived from sugar cane, mean the thick concentrated or condensed liquid, liquor, or fluid drained off the sugar or crystallized sugar in the making of sugar. See "Molasses" and "Sirup," New Standard Dictionary. That Congress used those terms in their ordinary

sense in paragraph 502 is evidenced by the fact that molasses and sirups are made dutiable by the gallon and not by the pound or dry measure. A gallon in the United States is a liquid and not a dry measure. See "Gallon"—New Standard Dictionary. For customs purposes, the gallon recognized by Congress and the Treasury Department is the wine gallon of 231 cubic inches, and is so defined by the Bureau of Standards. See article 598, Treasury Regulations, and Circular 47, issued by the Bureau of Standards, July 1, 1914; Senate resolution of May 29, 1830; letter of the Secretary of the Treasury to the President of the Senate, dated June 30, 1832; *Nichols* v. *Beard*, 15 Fed. 435, 437, 438; *United States* v. *Moos & Co.*, 5 Ct. Cust. Appls. 322, 325, 326.

If any evidence had been introduced establishing that in trade and commerce the designation "concrete molasses" was limited to the product manufactured by reducing the *original* cane juice to a solid form, or, if it had been shown that the merchandise would not respond satisfactorily to the polariscopic test, a different case would have been presented.

In view of the fact that there was no evidence as to commercial meaning, and of the further fact that the material imported was subjected to a polarization test by the Government chemist, we must find on this record that the product is within the provisions of paragraph 501 and excluded from paragraph 502.

The importation is, therefore, not dutiable as assessed or as claimed by the importer, and from that it follows that the judgment of the board overruling the protest must be *affirmed*.