ARKELL SAFETY BAG CO. *v.* UNITED STATES (No. 3916)[1]

[1] T. D. 48307.

United States Court of Customs and Patent Appeals, April 22, 1936

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

[Oral argument February 5, 1936, by Mr. Sharretts and Mr. Jackson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This case, which is a reappraisement proceeding, is before us a second time, the importer having here appealed from a judgment of the United States Customs Court, Third Division, remanding the case to a single judge with instructions to make the findings of foreign value specifically set forth in said judgment.

Two suits are involved, but, there having been originally a consolidation of them for trial, we shall hereinafter generally refer to the controversy in the singular.

The merchandise consists of machine glazed paper, imported from Sweden under the Tariff Act of 1930. As imported, the paper was in rolls measuring from 26 to 28 inches in diameter and weighing from 150 to 200 kilos (330 to 440 pounds) and sometimes as high as 500 kilos (1,100 pounds).

The importer, claiming that the merchandise had no foreign value, as foreign value is defined in paragraph (c) of section 402 of the Tariff Act of 1930, entered it at what was claimed to be the export value, as defined by paragraph (d) of said section. The local appraiser, however, took the view that there was a foreign value higher than the export (entered) value and appraised it accordingly.

The importer appealed to reappraisement and the single judge sitting in reappraisement, holding, in effect, that no foreign value existed, sustained the entered value. Upon appeal by the Government the United States Customs Court, Third Division, affirmed the decision of the trial judge. Appeal was then taken to this court and we took a view as to the legal aspect of the controversy different from that of the tribunals below and, holding that, under our view as to the law,

a foreign value existed, reversed the decision of the Third Division and remanded the causes with certain directions which later will be discussed. *United States* v. *Arkell Safety Bag Co.* (two suits), 22 C. C. P. A. (Customs) 258, T. D. 47210.

An examination of our former opinion will show the conflict in legal views between the tribunals of the lower court and a majority of this court.

Briefly, it may be said that those tribunals accepted the theory of the importer that the merchandise should be treated for appraisement purposes, not as *paper merely*, but as *rolls* of paper, and (it being found that the rolls placed upon the market in Sweden, due to the necessities and demands of consumers there, were much smaller in diameter and more costly to produce and place in packed condition than the large rolls, frequently referred to as "jumbo rolls", imported into this country) held that no foreign value, in the statutory sense, existed.

The majority of this court, for the reasons set forth in our former opinion, needless to be here repeated, were of the opinion that for appraisement purposes the merchandise should be considered as paper *per se* and, believing that upon this legal theory the merchandise had a foreign value, we remanded the case, to the end that there might be a finding of what that value was.

The pertinent part of the mandate from this court to the United States Customs Court reads:

Ordered that the judgment of the United States Customs Court be, and the same is hereby, reversed, and said causes are remanded to said court with directions that there be included in the court's decision findings in accordance with the statute, including foreign value, which, if it be the higher, shall be taken as the final appraised value.

Following receipt of the mandate, the Third Division, on December 20, 1934, entered an order, the pertinent portion of which reads:

It is hereby ordered, adjudged, and decreed that the original judgment of this Court in this case be, and the same is hereby reversed, and the cause is remanded with directions that there be included in the court's decision findings in accordance with the statute, including foreign value, which, if it be higher, shall be taken as the final appraised value.

On January 12, 1935, however, the Third Division entered an order revoking its order of December 20, 1934, saying:

It appearing that under date of December 20, 1934, this court remanded the cause to the trial court, which action was not in conformity with the directions contained in the mandate of the Court of Customs and Patent Appeals; now therefore it is hereby

Ordered, adjudged, and decreed that the judgment of this court, dated December 20, 1934, remanding the cause to the trial court be, and the same is hereby, vacated and set aside, and the cause shall be treated as pending before this court for further decision in accordance with the mandate of the Court of Customs and Patent Appeals.

On February 8, 1935, counsel for importer entered a motion that the case be remanded to the trial judge "for a new trial." Objection to the motion was made by counsel for the Government, and it was taken "under consideration."

On April 26, 1935, the appellate division rendered a decision in which the motion to remand the case for a new trial was denied, and the division itself proceeded to find foreign value, which foreign value so found is higher than the value at which the local appraiser originally appraised the merchandise.

The instant appeal is from the foregoing decision, and the assignments of error are:

The Third Division of the United States Customs Court has erred as follows:

1. In rendering a judgment more favorable to the Government than the decision of the Appraiser from which the importer alone appealed; contrary to the principles announced by the United States Supreme Court in *United States v. Lies*, 170 U. S. 628, and by this Court in *Johnson Co. v. United States*, 13 Ct. Cust. Appls. 373, 382, and *United States v. Von Oefele*, 4 Ct. Cust. Appls. 284.

2. In denying motion of counsel for the importer for a remand to the trial Judge with directions for a new trial.

3. In holding that the mandate of this Court directed the Division to find values from the record presented.

4. In not holding that as to questions of fact it was discretionary with the Division as to whether a new trial should be ordered.

The last three assignments of error will be treated together. In the fourth assignment it is stated that the court erred in not holding that as to questions of fact the ordering of a new trial was discretionary with the division. Under the circumstances above enumerated, we do not regard it as necessary to pass upon the question as to whether or not it was discretionary for the division to remand the case to the single reappraising judge with instructions to retry the case. Even if it were conceded that such requested action was within the discretionary power of the division, there is nothing about our mandate to it, or other circumstance of record, that would warrant the conclusion that the action of the appellate division in not remanding the case for retrial could be regarded as an abuse of such discretion.

Appellant's first assignment of error involves an interesting and, to some extent, novel question of law upon which we have found but few authorities which are in point. The principle of law invoked by the appellant in this assignment is the old familiar one that one who does not appeal from a judgment of a court cannot obtain, upon his adversary's appeal, a judgment more favorable than the one appealed from.

The Supreme Court of the United States in *United States v. Lies*, 170 U. S. 628, gave this principle controlling effect. This court in *United States v. Von Oefele*, 4 Ct. Cust. Appls. 284, and *Johnson Co. v. United States*, 13 Ct. Cust. Appls. 373, also regarded the principle as controlling of its decisions.

In the *Van Oefele* case, *supra* (a protest case), on a motion for rehearing, this court applied the principle, modified its former decision, and used the following language:

The Government urges in the brief accompanying its motion for rehearing that the importer not having appealed from the judgment of the board is not entitled to obtain in this court, at the appeal of the Government, a judgment more favorable to him than that rendered by the board. We think this contention is sound.

A party who is dissatisfied with the judgment of a lower tribunal, in order to obtain a review thereof and a judgment in an appellate tribunal more favorable to himself than that of the judgment under review, must take his appeal, and, failing in that, can be heard only in support of the judgment or decree from which the appeal is taken by the other party. The *Maria Martin* (79 U. S. 31); United States *v.* Lies (170 U. S. 628); *In re Crowly* (50 Fed. 465); *In re Gribbon* (55 Fed. 874).

In the *Johnson* case, *supra*, the principle was invoked by this court against the Government which, upon an importer's appeal, obtained a more favorable judgment in the appellate division of the Board of General Appraisers (now the United States Customs Court) than that which it (the Government) had obtained before the single general appraiser, from whose judgment it had not appealed or cross-appealed.

It will be noticed that in each of the above-cited cases, the principle was applied where the party had failed to appeal from a *judgment*.

The facts in the case at bar are entirely different from the facts in any of the above-cited authorities. In this case the collector did not *appeal* from the appraisement by the United States (or local) appraiser. The importer did *appeal* and the single appraising judge reduced the appraised value. The Government then appealed to the appellate tribunal from the judgment of the single appraising judge and there an appraised value was arrived at (after complying with the mandate of this court) which was higher than either the appraised value found by the United States appraiser or that found by the single appraising judge. Importer now contends that since the Government did not *appeal* from the appraised value found by the local appraiser, it cannot now have the benefit of an appraisement by the appellate tribunal which is higher than the original appraised value.

We know of no authority that carries the doctrine to the extent urged here by the importer and we do not think that the holdings in the above cases cited require such a holding as is here requested by the appellant. We quote the following portion of section 501 of the Tariff Act of 1930:

SEC. 501. NOTICE OF APPRAISEMENT—REAPPRAISEMENT.

* * * The decision of the appraiser shall be final and conclusive upon all parties unless *a written appeal for a reappraisement* is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his

attorney. No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court and shall be assigned to one of the judges, who shall, after affording the parties an opportunity to be heard, determine the value of the merchandise. * * * (Italics ours.)

It will be noticed that the statute refers to this reappraisement proceeding as an *appeal*. While in the statute it is termed an *appeal*, the proceeding has none of the characteristics of an appeal such as applies to court judgments. It is not from a proceeding in which a judgment is entered, nor is it a review of such a proceeding in an appellate sense and the proceeding involves no consideration of assignments of error. The action of the local appraiser has none of the characteristics of a judicial proceeding and judicial powers are for the first time invoked in the trial by the single reappraising judge. While the duties of the single reappraising judge involve the exercise of judicial functions, those of the local appraiser do not.

Quite a similar question was presented in *In re Megroz, Portier, Magny & Co.*, T. D. 11537, G. A. 712 (1891 Synopsis of Decisions, Vol. II). There a general appraiser, on appeal by the importer to reappraisement, advanced the value of certain goods beyond that fixed by the United States appraiser. The Board of General Appraisers affirmed the decision of the single general appraiser. The importer, in protesting the action of the collector in taking duties in accordance with such decision, contended that the reappraisement was void on the ground that such general appraiser had no authority on reappraisement to raise the value above that fixed by the local appraiser, no appeal having been taken by the collector. In an opinion by General Appraiser Somerville, the board held:

This ground of protest is manifestly untenable, if not frivolous. The duty of all appraising officers—including the local appraiser, the General Appraiser acting on reappraisement, and the Board of General Appraisers on final appeal—is to ascertain "the *actual market value* and wholesale price of the merchandise at the time of exportation to the United States in the principal markets of the country whence the same has been imported." (Act June 10, 1890, sections 10 and 13.) This actual market value is defined in section 3 to be the price at which the merchandise described in the invoice is freely offered for sale to all purchasers in said markets, and that it is the price which the manufacturers, or owner making the declaration, "would have received, and was willing to receive, for such merchandise sold in the ordinary course of trade in the usual wholesale quantities", and it is made to include all charges provided for by law.

The decision of the local appraiser as to values cannot, in any respect, fetter the authority of the General Appraiser, whose duty it is to review such decision *de novo*, and to declare such market value, whatever it may be, whether above or below that found in the original appraisement.

Neither the General Appraiser who held the reappraisement, nor the Board of General Appraisers which affirmed his decision, exceeded their jurisdiction in the

particular specified in the protest. These officers having proceeded in conformity to the requirements of the statute, the law makes their decision "final and conclusive as to the dutiable value of the merchandise against all parties interested therein." (Act June 10, 1890, section 13.)

See also *In re Megros, Portier, Magney & Co.*, T. D. 10670, G. A. 254 (1891 Synopsis of Decisions, Vol. I).

The first above-cited *Megroz* case was appealed to the Circuit Court for the Southern District of New York, where the decision of the Board of United States General Appraisers was affirmed (*In re Megroz et al.*, 49 Fed. 828), and Circuit Judge Lacombe said:

An appraiser, whenever called upon to act, is not constrained at all by the rules that pertain to courts, but goes to work to satisfy his own mind, in the best way he can, what goods are worth; and he can do that notwithstanding he reaches the conclusion that the goods are worth more than the value fixed by the local appraiser. * * *

It may be suggested that under the tariff act of 1890 the duties of the single general appraiser, sitting in reappraisement, differed materially from those of a single reappraising judge under the tariff law now in force and effect. It is true that under that act the functions of the single general appraiser upon reappraisement were inquisitorial as well as judicial and that he was privileged, in the language of Judge Lacombe, "to satisfy his own mind, in the best way he can" as to the value of the merchandise whereas under existing law a single judge sitting in reappraisement does not operate under such broad statutory powers. This consideration, however, in our judgment, does not affect the conclusion which we have herein reached. The proceeding before the single judge sitting in reappraisement, under existing law, is the first instance in customs litigation where a decision as to value is arrived at which partakes of the character of a judicial finding, and his action, like that of the single general appraiser sitting in reappraisement under the tariff act of 1890, is *de novo*. He, now as then, is required to find value, and nothing has been pointed out to us that would suggest a congressional intent that in doing so the decision of the local appraiser should be held to "fetter" the right of the single reappraising judge "to declare such market value, whatever it may be, whether above or below that found in the original appraisement" (using the language of General Appraiser Somerville in the first above-cited *Megroz* case.)

It may be suggested that the Government made no assignment of error in its appeal from the single reappraising judge to the division which entitled it to a judgment for a value greater than that found by the United States appraiser, and that it was bound by its assignment of error No. 5 which reads:

5. In not finding and holding the home market value, as found by the appraiser, to be the dutiable value.

We do not think, under the circumstances confronting us here, that we are privileged to express any view on the interesting question of law thus suggested. Appellant in this appeal has assigned no error which even suggests that the appellate division of the United States Customs Court erred in this regard.

The judgment of the United States Customs Court is *affirmed.*

### DISSENTING OPINION

GARRETT, Judge: The decision of the Board of General Appraisers in *In re Megroz, Portier, Magny & Co.*, upon which great reliance seems to be placed by the majority, it having been affirmed by a United States Circuit Court, was rendered June 30, 1891. The case arose under the 1890 tariff act. Since that time numerous and fundamental changes have been made in succeeding tariff acts with reference to the appraisement of merchandise and the relation of the tribunals of the United States Board of General Appraisers (now the United States Customs Court) thereto. See *United States* v. *McConnaughey & Co.*, 13 Ct. Cust. Appls. 112, T. D. 40944, and *Johnson & Co.* v. *United States* (the latter cited by the majority) for a discussion of certain changes made by the Tariff Act of 1922. In addition to what was done in the Tariff Act of 1922 there was inserted into section 501 of the Tariff Act of 1930 a provision reading:

The value found by the [local] appraiser shall be presumed to be the value of the merchandise and the burden shall rest upon the party who challenges its correctness to prove otherwise.

The effect of this provision, as I view it, is to place the administrative act of the local appraiser in *valuing* merchandise for duty purposes upon the same plane as the administrative act of the Collector of Customs in *classifying* merchandise for duty purposes, so far as presumption of correctness is concerned.

The case of *United States* v. *Von Oefele*, cited in the majority opinion here, arose by protest. The collector had classified certain dried and ground volcanic earth, apparently used in taking "mud baths", as an article composed of mineral substances at 35 per centum ad valorem under paragraph 95 of the tariff act of 1909 The importer protested, making alternative claims, one being under paragraph 480 of the act providing for nonenumerated manufactured articles, and another under paragraph 90 of the act as an earth wrought or manufactured. The Board of General Appraisers (now the United States Customs Court) held the merchandise classifiable under paragraph 480. The Government appealed but the importer did not cross appeal. In this court the Government conceded that the collector's classification was wrong, and the importer seems to have conceded that the judgment of the board was wrong and that classi-

fication should have been under paragraph 90. This court so held and entered judgment accordingly. Thereupon the Government filed petition for rehearing, pointing out that as a result of this court's classification the amount of duty to be paid was less than the amount which would have been paid if the reliquidation had been made under the board's classification and insisted that the importer, not having cross appealed, was not entitled to the more favorable judgment rendered. This court granted the rehearing and in a second opinion (*United States* v. *Von Oefele*, 4 Ct. Cust. Appls. 284, T. D. 33492), while adhering to its view as to the correct classification of the merchandise, held that importer's failure to cross appeal deprived it of the benefit of such classification, and simply reversed the judgment of the board, thus leaving in effect, so far as that case was concerned, the classification of the collector, although it was conceded to have been erroneous.

It may be remarked that this court in a number of cases where it was found that both the classifications of the collector and the claims of the importer were erroneous, has overruled the protests. The result in such instances has been to leave the collector's duty assessments in effect in those particular cases. *Vide Tower & Sons* v. *United States*, 11 Ct. Cust. Appls. 155, T. D. 38947; *Balfour, Guthrie & Co.* v. *United States*, 14 Ct. Cust. Appls. 78, T. D. 41582.

The *Johnson & Co.* case, *supra*, was a reappraisement proceeding, the purport of our holding in which, as stated in effect in the majority opinion here, was that a party not appealing from the finding of the single judge sitting in reappraisement could not have the benefit of a finding of value by the appellate division more favorable than that of the single judge.

In the case at bar the first appeal taken was that by the importer to the single judge from the value, declared to be foreign value, found by the local appraiser. So, the burden rested upon the importer to overcome the presumption of correctness attaching to the local appraiser's finding, and to show the correctness of the value claimed by it. The Government not only did not complain before the single judge of the value found by the local appraiser but sought to have it maintained, and when the single judge found for the importer and the Government appealed, it sought only to maintain before the appellate division the value which the local appraiser had found. Its assignments of error upon this point both as to questions of fact and questions of law seem to me to be clear and unmistakable.

Indeed, had the single judge held with the Government in the first instance, I apprehend that there would have been no right of appeal on its part to the appellate division.

Upon the Government's appeal to this court from the decision and judgment of the appellate division sustaining the action of the single

judge, the only relief sought by it was to have the value found by the local appraiser sustained. It does not seem to me to have been in position, in view of its failure to appeal in the first instance, to have sought any other than that particular relief, and, under the assignments of error made upon the Government's appeal to us, we could not, in my opinion, have granted it a more favorable finding than that for which it specifically contended—the value found by the local appraiser.

When the cause was reinstated in the court below upon our order of remand, that tribunal had before it no new assignments of error and, upon the record so standing, I am of the opinion that the division exceeded its authority in making a finding more favorable to the Government than any which, up to the time of its rendition, the Government had sought. It is my view that importer's first assignment of error in the instant appeal is sufficient to cover the material issue raised on its behalf and that it should be sustained.

It may be added that throughout the proceedings in this case there has been no contention on the part of any one that the value found by the local appraiser did not equitably represent the correct dutiable value, if foreign-market value should be found to be the proper value to be taken as the basis upon which to assess duties. The importer simply insisted, in the first instance, that there was no foreign-market value under its legal theory, but conceded that, if a foreign-market value existed, the local appraiser's finding was equitable.

A judicial practice through which judgments as to duty assessments, under classifications conceded by all the parties in interest to be erroneous, are upheld, while findings of value, upon the basis of which duties are levied, conceded by all the parties in interest to be right (the legal theory being once settled), are overthrown, seems to me to be anomalous, to say the least of it.