UNITED STATES *v.* OLAVARRIA & CO., INC. (No. 4605)[1]

United States Court of Customs and Patent Appeals, November 7, 1949

---

[1] C. A. D. 417.

*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

*Baer & Marks* (*Donald Marks* and *John J. Leighton* of counsel) for appellee.

[Oral argument October 7, 1949, by Mr. Weeks and Mr. Marks]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, rendered in accordance with its decision, 20 Cust. Ct. 197, C. D. 1110, sustaining five protests of appellee in so far as they claimed that the merchandise here involved, which consisted of twenty-seven entries of artifically flavored sirup imported from Cuba, was dutiable as sugar sirup, not specially provided for, under paragraph 502 of the Tariff Act of 1930, as modified by the supplemental trade agreement with Cuba, T. D. 50541.

The merchandise was classified by the Collector of Customs at the port of Tampa as sugar dutiable under paragraph 501 of the act, as modified by the said trade agreement, by invoking the mixed materials clause of paragraph 1559 and thereby finding that the importations were articles not enumerated in the act, manufactured of two or more materials, composed in chief value of sugar.

The involved protests were consolidated for trial. Five witnesses were introduced on behalf of appellee and nine for appellant. Two illustrative samples of the merchandise, Exhibits A and B, numerous official reports showing results of the laboratory analyses of the representative samples taken by appellant from the importations, and four documentary exhibits were introduced in evidence.

Although a voluminous record, two elaborate main briefs, and a reply brief have been filed, the sole question is whether the sirups here in issue are dutiable as sugar sirups within the purview of paragraph 502. More specifically, the judgment appealed from involved the primary question of whether the presence of the artificial flavoring in the imported sirup removed the instant importations from the *eo nomine* provision for "sugar sirups, not specially provided for," in said paragraph.

It is deemed proper at this point to quote paragraphs 501 and 502 of the Tariff Act of 1930. They read:

PAR. 501. Sugars, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope not above seventy-five sugar degrees, and all mixtures containing sugar and water, testing by the polariscope above fifty sugar degrees and not above seventy-five sugar degrees, 1.7125 cents per pound, and for each additional sugar degree shown by the polariscopic test, three hundred and seventy-five ten-thousandths of 1 cent per pound additional, and fractions of a degree in proportion.

PAR. 502. Molasses and sugar sirups, not specially provided for, testing not above 48 per centum total sugars, one-fourth of 1 cent per gallon; testing above 48 per centum total sugars, two hundred and seventy-five one-thousandths of 1

cent additional for each per centum of total sugars and fractions of a per centum in proportion. Molasses not imported to be commercially used for the extraction of sugar or for human consumption, three one-hundredths of 1 cent per pound of total sugars.

The involved trade agreement, T. D. 50541, so far as pertinent, reduced the duty on molasses and sugar sirups, not especially pro-provided for, testing not above 48 per centum total sugars, at one rate, and those testing above 48 per centum at an additional rate for each per centum, and fractions of a per centum in proportion, of total sugars.

The evidence disclosed that for a number of years prior to the year 1941 millions of gallons of inverted unflavored sugar sirup had been imported from Cuba under no specific trade name, brand, or label and sold in barrels or tank cars exclusively to manufacturers and processors of food products, such as cookies, cakes, ice cream, soft drinks, candy, drugs, fountain sirups, and cordials; that the merchandise was never sold directly to the ultimate consumer in the form in which it was imported; and that from 1941 until 1943 such importations, which had been properly classified and assessed with duty under paragraph 502, ceased because of the war demands for shipping.

The evidence further disclosed that in 1943 shipping from Cuba became available again and importations of these sirups, which then contained an additional ingredient of from one-eighth to one-sixteenth of an ounce of flavoring, such as vanillin, mapleine, or white pine per gallon of sirup, began in large quantities, because such flavored sugar sirups under a regulation of the Office of Price Administration were not subject to sugar rationing; that the volume of such importations grew very rapidly and to such an extent during the period of 1943 and the first four months of 1944 that the Office of Price Administration on May 1, 1944, revoked the regulation in question; and that importations such as are here involved ceased completely after May 1, 1944.

The following definition was derived from the evidence and set forth in the opinion of the trial court:

*Sirup.* A sugar sirup by commercial standards must be a concentrated solution of sugar and water. In a sucrose sirup, maximum concentration is approximately 67%; in an invert sirup maximum practical concentration is about 78% to 80%.

The record also discloses that the terms "liquid sugar" and "sugar sirups" were used synonymously by the trade; that 'liquid sugar" was an over-all term used to cover both sugar sirup and invert sugar; and that the public generally made no distinction between a sucrose sirup and an invert sirup when the term "sugar sirup" was used.

The importations at bar, as shown by the official analyses, consist of cane sugar sirup, containing sucrose and invert sugars, with a total sugar content of 77 per centum, together with a flavoring, either

vanilla, mapleine, or maple, and, with two exceptions, testing by the polariscope below 50 sugar degrees.

Regarding the process by which the involved commodity was manufactured, and its resultant characteristics, the court below accurately stated:

The commodity before us is described as a partially inverted sugar sirup to which some flavoring has been added. It is made by melting down raw sugar, subjecting it to further filtration and refining treatment, after which the clarified sirup is partially inverted to prevent further crystallization. In its final form the sirup is a colorless or pale amber liquid which, in this case, contained a maximum concentration of sucrose and reducing sugars in combination. The inverting agent, which may be hydrochloric acid or some similar catalyst, is neutralized when the inversion process has reached the required point.

The involved sirups, according to the record, were flavored not for commercial purposes but for the sole purpose of qualifying the product to meet the legal requirement of a highly technical definition of the Office of Price Administration as to the type of product for which sugar ration coupons had to be surrendered; that the amount of such flavoring was so insignificant that its presence in the product effected no basic change either in its use or the users thereof; that in every respect the imported sirups were used for the same purposes and in the same manner as the unflavored sirups; and that the bakers and manufacturers of dairy products, drugs, and beverages who used the merchandise and wanted a flavored sirup had to add their own flavoring for their particular purposes.

There is no disagreement here between the parties concerning the dutiability of certain imported sirups wherein the presence of the flavoring or the coloring matter differentiates the product from the ordinary sugar sirups properly classifiable under paragraph 502.

In the instant case both the flavored and unflavored sirups appeared the same, have the same general physical characteristics and viscosity, and were used for the same general purposes. An uncontested shipment or entry of record, W-382, of 89 barrels of the sirups, minus the flavoring, was imported simultaneously by appellee and, without question, properly classified and assessed by the collector under paragraph 502. Moreover, it appears without contradiction in the record, and appellant concedes in its brief, that there was no commercial difference between the inverted unflavored sirups previously imported from Cuba and the inverted flavored sirups here in issue.

The trial court in reaching its final conclusion reviewed the testimony of the witnesses, the legislative history of paragraphs 501 and 502, together with the judicial interpretations thereof, and held that the record contained no satisfactory proof of commercial designation of the term "sugar sirups"; that such term was employed in paragraph 502 in its ordinary meaning, that is, to describe a saturated solution of sugar in water; and that appellee's imported product, according to

the evidence, consisted in each contested instance of a saturated solution which met the test of a sugar sirup within the purview of paragraph 502 as hereinbefore described.

The court below further held that the imported sirup was a saturated solution of sugar in water, generally used for purposes other than that of being refined, in accordance with the definition of "sugar sirups" established in the case of *Cresca Co. (Inc.)* v. *United States,* 15 Ct. Cust. Appls. 105, T. D. 42185, wherein this court also held that paragraph 502 applied to sugar sirups generally used for purposes other than that of being refined whereas paragraph 501 applied to articles transmutable into refined sugar. To the same effect, the court below further cited the decision of this court in the case of *Savannah Sugar Refining Corp.* v. *United States,* 20 C. C. P. A. (Customs) 272, T. D. 46061.

Appellant asserts that the trial court erred in holding, contrary to law and the weight of evidence, that the imported merchandise fell within the purview of paragraph 502; in failing to find and hold, as a matter of law, that paragraph 502 in its designation of "sugar sirups, not specially provided for," refers only to by-product sirups drained off during the process of manufacturing cane sugar; that the instant sirups were not drained off during such process, and, therefore, were not dutiable as sugar sirups within the meaning of paragraph 502; and in failing to find, as a matter of law, that the imported merchandise does not belong to that class of "sugar sirups" which the Congress intended to include in paragraph 502.

The factor which controls the proper disposition of the question here in issue according to appellant's contention is contained in the following excerpt from the Summary of Tariff Information, 1929, page 996, which reads:

The words "molasses" and "sirup" standing by themselves as commonly understood and when used to designate the table product derived from sugar cane have been held to mean the thick concentrated or condensed liquor or fluid drained off the sugar or crystallized sugar in the making of sugar. That Congress used those terms in their ordinary sense in paragraph 502 was held by the Court of Customs Appeals to be evidenced by the fact that molasses and sirups are therein made dutiable by the gallon and not by the pound or dry measure. A gallon in the United States was held to be a liquid and not a dry measure. For customs purposes the gallon recognized by the Congress and the Treasury Department is the wine gallon of 231 cubic inches. (14 Ct. Cust. Appls. 78; T. D. 43024.) * * *

Appellant directs attention to the fact that at the time the Congress was engaged in formulating the Tariff Act of 1930, the Tariff Commission furnished the information hereinbefore quoted to the Committee on Ways and Means. Appellant argues therefrom that the legislative history of paragraph 502 clearly indicates that the Congress was not at all concerned with the saturation or non-saturation of the sirup and

that it is immaterial that the sirups at bar were saturated. Appellant, however, points to the fact that:

The court below adopted an entirely different line of reasoning. It referred to *Savannah Sugar Refining Co.* v. *United States*, 20 C. C. P. A. (Customs) 272 as standing for the proposition that the common meaning of "sugar sirup" was a saturated solution of sugar and water and that Congress must have used the term in its common meaning. The court referred to *Cresca* v. *United States*, 15 Ct. Cust. Appls. 105, as standing for the proposition that the sugar content of a solution determines whether it is or is not a sirup and that a product which is not a saturated solution of sugar and water is not a sugar sirup as that term is used in paragraph 502. Further reference to the cited cases convinced the court that "mixtures containing sugar and water" in paragraph 501 specified an article transmuted [transmutable] into refined sugar while "sugar sirups not specially provided for" in paragraph 502 specified those used for purposes other than that of being refined. * * *

Appellee asserts that appellant's reasoning implies that this court in the *Savannah* and *Cresca* cases, *supra*, adopted a definition of the term "sugar sirups" contrary to the legislative intent in the enactment of paragraph 502, since invert sirups, which are saturated solutions of sugar, have been held dutiable under paragraph 502; that, as described in the record, the instant importations are not by-product sirups drained off during the process of manufacturing cane sugar but consist of a product which starts with a solution of sucrose and by the process of partial or total inversion results in a product distinctive in its own right which, once inverted, cannot thereafter be commercially used for the manufacture of sugar. Be that as it may, this court is convinced that other considerations clearly demonstrate that appellant's contentions on the point in question are without merit.

Reverting to the quotation from the Summary of Tariff Information hereinbefore set forth, we note that in the quoted statement the attention of the Congress was directed to the fact that the described definition was derived from two decisions judicially defining the involved term; namely, 14 Ct. Cust. Appls. 78, and T. D. 43024. Therefore, those two decisions must be considered in connection with the remainder of the quoted text in properly determining what definition of the word "sirup" was actually submitted to the Congress for its information in the formulation of the Tariff Act of 1930. The first of the two citations hereinbefore described properly identified refers to the decision of this court in the case of *Balfour, Guthrie & Co.* v. *United States*, 14 Ct. Cust. Appls. 78, T. D. 41582, and the second refers to the decision of the United States Customs Court, Third Division, in the case of *Neuman & Schwiers Co. (Inc.)* v. *United States*, T. D. 43024, dated October 30, 1928.

The decision in the case of *Balfour, Guthrie & Co.* v. *United States*, *supra*, contains the original and complete text of the paragraph from which the Tariff Commission took the quoted excerpt upon which appellant here relies. That decision was written by Judge Smith

and handed down on May 1, 1926. However, the significant suggestion of Judge Smith, speaking for the court in the *Balfour* case relative to the derivation of his definition of "molasses" and "sirups," was omitted from the text in the Summary of Tariff Information. That suggestion is included in the following portion of the properly quoted text, here italicized so far as pertinent:

> The words "molasses" and "sirups," standing by themselves, as commonly understood and when used to designate the table product derived from sugar cane, mean the thick concentrated or condensed liquid, liquor, or fluid drained off the sugar or crystallized sugar in the making of sugar. *See "Molasses" and "Sirup," New Standard Dictionary.*

The decision in the *Balfour* case as hereinbefore described was rendered on May 1, 1926, and reference to the New Standard Dictionary, 1925, discloses that the word sirup was there given the following pertinent definition: "A saturated solution of sugar in water, * * *." Moreover, any ambiguity as to the definition of the term "sirups" in the *Balfour* case was subsequently clarified by Judge Smith when he subsequently wrote the decision dated May 7, 1927, in the case of *Cresca Co.' (Inc.)* v. *United States, supra,* wherein the term "sirup" was thus judicially defined by this court: "A sirup is a saturated solution of sugar in water. See 'sirup'—New Standard Dictionary."

The involved text from the *Balfour* case was properly quoted with approval in such cases as *Neuman & Schwiers Co. (Inc.)* v. *United States, supra,* and *Cresca Co. (Inc.)* et al. v. *United States,* 17 Ct. Cust. Appls. 83, 85, T. D. 43376. The latter case was decided April 29, 1929. Therefore, when the Congress formulated the Tariff Act of 1930, the members thereof had before them full knowledge that the term "sugar sirups," employed in paragraph 502 of the Tariff Act of 1922, had been judicially defined as sirups consisting of a saturated solution of sugar in water generally used for purposes other than that of being refined.

Appellant expresses some disagreement with the respective decisions of this court in the *Savannah* and the first *Cresca* case, *supra,* and by its argument further implies, as appellee has stated, that this court in those two cases adopted a definition of the term "sugar sirups" which was contrary to the legislative intent when paragraph 502 of the Tariff Act of 1930 was enacted. There may be justification for appellant's criticism with reference to an inapplicable portion of the decision in the first *Cresca* case, *supra.* See *Mouquin (Inc.)* v. *United States,* 60 Treas. Dec. 415, T. D. 45114. Appellant, however, admits in its brief that the decision in the first *Cresca* case truly "noted the dictionary definition of a sirup being a saturated sirup."

The decisions of this court and that of the trial court in the *Savannah* case, *supra,* disclose that both courts in 1932 there made an exhaustive

and enlightening study of the composition of sugars and sugar sirups and their classification for tariff purposes. This court fully considered different definitions of the words "sirups" and "sugar sirups" and approved the cited definition of the first *Cresca* case to the effect that the term "sirup" indicated a saturated solution of sugar in water, and that paragraph 502 applied to sugar sirups generally used for purposes other than being refined. On the same point, the trial court in the *Savannah* case, T. D. 45477, stated:

\* \* \* According to the Standard Dictionary a sirup is "a saturated solution of sugar in water." While this definition does not name it a sugar sirup, plainly, since the water is saturated with sugar, it could be nothing but a sugar sirup.

We have reviewed the decisions of this court in the two cases just discussed, together with the decision of the trial court in the instant case, and find that each such decision represents a correct finding as to the meaning of the term "sugar sirups" within the purview of paragraph 502 of the Tariff Act of 1930. Moreover, the action by which the Government over a long and continued period classified the involved unflavored merchandise under paragraph 502 denotes that appellant had no doubt that the legislative intent as to the term "sugar sirups" signified something wholly inconsistent with appellant's present contention on that point.

There is no dispute here that the sirups at bar are in chief value of sugar. As a matter of fact, appellee concedes in its brief that the sirup "was *composed* of two materials; that is, sugar sirup and a small amount of flavoring." The trial court found no evidence, however, that the presence of one-sixteenth to one-eighth of an ounce of flavoring to one gallon of sirup was a distinguishing feature of the involved commodity or changed it into something other than the sugar sirup *eo nomine* provided for without limitation in paragraph 502 and accordingly held that the involved flavored sirup was an article enumerated in paragraph 502.

The court below properly held also that inasmuch as the *eo nomine* statutory designation of "sugar sirups" in paragraph 502 was without limitation, except as to the polarization test, or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, the term included the instant form of the article. See *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, 470 T. D. 47464; *Crosse & Blackwell Co.* v. *United States*, 36 C. C. P. A. (Customs) 33, C. A. D. 393. See also *Mawer Co.* v. *United States*, 7 Ct. Cust. Appls. 493, T. D. 37108, 32 Treas. Dec. 369.

In view of the conclusion hereinbefore expressed, it is deemed unnecessary to review and pass upon other points which have been here raised by counsel for the respective parties, and the judgment of

the United States Customs Court appealed from is, for the reasons stated, *affirmed*.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.