(C. D. 1321)

JOHN SEXTON & CO., INC. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided April 17, 1951)

*Wallace & Schwartz* (*Joseph Schwartz* and *Barnes, Richardson & Colburn* (by *Edward N. Glad*) of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Richard H. Welsh* and *Dorothy C. Bennett*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: This case involves the proper amount of duty assessable upon an importation of 96 barrels of what is described on the invoice as Cuban cane sugar sirup, pineapple-flavored. The collector of customs at Chicago, the port of entry, assessed duty thereon at the rate of 20 per centum ad valorem under the provisions of paragraph 1558 of the Tariff Act of 1930, as a nonenumerated manufactured article, with an allowance of 20 per centum from that rate as a product of Cuba. Plaintiff has protested this assessment and payment, making various claims, the one stressed being that the provisions of paragraph 502 of the same act, as modified by the Supplemental Cuban Trade Agreement (T. D. 50541), are properly applicable and that the merchandise is dutiable at 0.1 cent per gallon, plus 0.11 cent additional for each per centum over 48 per centum of total sugars and fractions of a per centum in proportion, as sugar sirup. This claim is made in view of the decision in *United States* v. *Olavarria & Co., Inc.*, 37 C. C. P. A. (Customs) 40, C. A. D. 417, which plaintiff contends involved such or similar merchandise. The court held the merchandise in the cited case to be properly dutiable as sugar sirup under said paragraph 502, as modified, *supra*, rather than as sugars under paragraph 501 of the same act, by virtue of paragraph 1559 thereof. The record in the cited case was not incorporated herein nor was a sample of the merchandise here involved offered in evidence. Plaintiff's claim of identity or similarity is based on the description of the instant merchandise as given by the Government chemist, i. e., that it is a "flavored solution of sugar and water, which was probably a saturate" and upon a statement of the court in the decided case that in a sucrose sirup the maximum concentration is approximately 67 per centum, and in an invert sirup the maximum concentration is about 78 per centum to 80 per centum.

The provisions of the statute involved, insofar as pertinent, are set forth below.[1]

---

[1] PAR. 502. [as modified by the Supplemental Cuban Trade Agreement, T. D. 50541]:

Molasses and sugar sirups, not specially provided for, if the product of Cuba:

    Testing not above 48 per centum total sugars_____0.1¢ per gal.

    Testing above 48 per centum total sugars_____0.11¢ additional for each per centum of total sugars and fractions of a per centum in proportion.

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

Plaintiff introduced the testimony of two witnesses, Mr. Henry B. Taylor, chief chemist in the United States Customs Laboratory at the port of Chicago, and Mr. Brice A. Lane, examiner in the office of the appraiser at the same port. Neither of these witnesses had personal knowledge of the method by which the imported product was manufactured nor the use to which it was put after importation. The Government chemist testified to receiving a sample of the imported commodity for analysis as to sugar content and weight per gallon. This analysis is part of the official papers forwarded to the court by the collector. Based upon such analysis, the witness testified that the commodity was found to be a mixture containing 76½ per centum invert sugar and 2.87 per centum sucrose, making the total sugars 79.37 per centum; that the polariscopic test showed a minus 16⅒ degrees, indicating that the major portion of the sugars was invert sugars.

This witness further testified that to the best of his recollection the imported mixture was a thick liquid, slightly yellow in color. He described sucrose as the usual sugar in commerce that is used on the table, derived from either cane or sugar beets, while invert sugar "is the sugar that comes when sucrose is chemically inverted by either acid or by invertase, or some other method of changing the chemical composition of a sucrose," which has a negative reading on the polariscope, and is composed of two very definite sugars, dextrose and levulose. He stated that the majority of sugars in the instant mixture are invert sugars; that probably acid had been placed in this mixture and that the sucrose had been inverted to dextrose and levulose, or invert sugar. The witness conducted an organic elliptic test in order to determine if the mixture was plain sugar sirup or contained pineapple flavor. He found that it tasted like pineapple but was unable to tell whether that was due to natural pineapple or artificial flavor. He made no test to determine what proportion of the article consisted of pineapple flavor but gave it as his opinion that a flavoring material of less than one-half of 1 per centum would be used in the mixture for the reason that if more than that were used, it would destroy the flavor of the material; that assuming one-half of 1 per centum was used, the remaining 20.13 per centum, if the mixture was a sirup, must have been water. In reply to the question as to whether he would describe the imported product as a saturated solution of sugar and water with a small amount of pineapple flavor added, the witness replied that he would describe it as a flavored solution of sugar and water, which was *probably* a saturate. It may be noted at this point that the term "sirup" has been defined as a "saturated solution of sugar in water." *Cresca Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 105, T. D. 42185; *Balfour, Guthrie & Co.* v. *United States*, 14 Ct. Cust. Appls. 78, T. D. 41582; *Neuman & Schwiers Co. (Inc.)* v.

*United States*, 54 Treas. Dec. 328, T. D. 43024; and *United States* v. *Olavarria & Co., Inc.*, 37 C. C. P. A. (Customs) 40, C. A. D. 417.

This witness stated that he thought that from the analysis made of the mixture, the component material of chief value can be obtained and that one of the functions of the Government chemist is to make the analysis so that the examiner or appraiser can determine the component material of chief value in the mixture. On cross-examination, he stated that his estimate of the amount of flavoring contained in the imported product was merely his opinion.

The Government examiner of this merchandise testified that his description of the commodity would be about the same as that given by the Government chemist above; that he reported the component material of chief value for internal revenue purposes to be invert sugars in the amount of 76½ per centum; that this sirup is identical with that covered by other invoices in which he had the formula. By reference to his files, he testified as follows:

Now, a batch of 405 gallons contained refined sugar 9.12 pounds per gallon. The first cost is 4¼ cents a pound; the added cost was none; total of 0.3876 dollars per gallon. The flavor, pineapple flavor in this shipment is one-eighth ounce per gallon. The cost is $11 per liter, makes $15.65 for a batch. That was Kohnstaam & Co. Tartaric acid, 1¼ pounds per thousand pounds of sugar. The first cost is $1.15 and totals $1.4375 a batch.

He was asked what were the proportionate values of the sugar and water mixture in this importation, to which he replied:

The water has practically no value. The vanillin flavor, $15.65 for a batch of 405 gallons. Tartaric acid used, $1.43¾ a batch. The sugar at 38.76 cents per gallon, multiplied by 405 gallons, is the value of the sugar.

He was then asked:

Q. You accepted those statements as correct, did you, in making your return in the present case?

To this question he answered:

Yes, that is correct.

We understand these statements to refer to a shipment of what the witness considered identical or similar merchandise. He refers to a batch of 405 gallons, whereas the instant shipment consisted of 4,860 gallons, and to "vanillin flavor," whereas we have before us a commodity with pineapple flavor.

On cross-examination, the examiner admitted that he did not know the process of manufacture of the instant product.

The Government chemist, upon being recalled to the stand, stated that the purpose of the tartaric acid was to invert the sugar; that it might preserve the solution slightly, but the main purpose was to invert the sugar. His statement was that one-eighth of an ounce of flavoring per gallon is relatively a medium amount of flavor, but as pineapple flavor is probably very strong, it was all that was neces-

sary to give the commodity a pineapple flavor; that certain essences are very .powerful flavoring material; and that he believes pineapple would be one of those essences.

On cross-examination, he testified that, in his opinion, artificial pineapple flavor is a great deal stronger than natural pineapple flavor; and that the small amount of flavoring matter in the instant commodity would not be enough to affect the polariscopic reading of minus 16.1 degrees.

The testimony above set forth is insufficient to sustain plaintiff's burden of proof that the instant commodity is identical or similar for duty purposes to that involved in the *Olavarria* case, *supra*. No sample of the instant commodity is present, nor was the record in the cited case incorporated, and as pointed out, neither of the witnesses had any personal knowledge of the method of manufacture of this pineapple-flavored mixture. Therefore, the claims of the plaintiff must be overruled. Upon the record as presented we find and so hold that the presumption of correctness attaching to the collector's assessment at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1558, *supra*, with an allowance of 20 per centum Cuban preferential, has not been overcome and such assessment is in conformity with the reasoning of the decisions in the following cases: *Cresca Co.* v. *United States*, 17 C. C. P. A. (Customs) 83, T. D. 43376; *Mouquin, Inc.* v. *United States*, 23 C. C. P. A. (Customs) 196, T. D. 48050; *Neuman & Schwiers Co. (Inc).* v. *United States*, *supra*; *Monteverde Rolandelli, etc.* v. *United States*, 58 Treas. Dec. 223, T. D. 44233; *Mouquin (Inc.)* v. *United States*, 60, Treas. Dec. 415, T. D. 45114; and *Cresca Co.* v. *United States*, 71 Treas. Dec. 953, T. D. 49027.

Judgment will be rendered for the defendant.