(Reap. Dec. 8928)

STEELMASTER, INC. v. UNITED STATES

Entry No. 762308, etc.

(Decided July 23, 1957)

*Barnes, Richardson & Colburn* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General, (*Samuel D. Spector*, trial attorney), for the defendant.

JOHNSON, Judge: The appeals for reappraisement listed in schedule "A," attached hereto and made a part hereof, were consolidated at the trial. The merchandise consists of decorated vitrified chinaware, principally openwork plates and baskets, exported from Germany between July 4, 1948, and January 8, 1949. It was entered on the basis of the invoice unit values, less included charges for cartage, inland freight, and insurance. It was appraised at higher unit values, less the same included charges.

It was stipulated at the trial that, during and before the exportations involved herein, rigid controls were exercised over Western German industry by the occupation forces and the *de facto* Government to such extent that neither such nor similar merchandise was

freely offered for sale for home consumption. The merchandise was appraised on the basis of export value. Plaintiff does not quarrel with the basis of valuation, but claims that the appraised values represented the prices for first-quality merchandise, whereas the articles involved herein were of second quality.

Plaintiff called as a witness Arthur Scholder, vice president of the plaintiff company, who testified as follows:

He visited the factory of Schumann & Schreider, the German manufacturer, in 1947, 1948, and 1949, where he was shown samples of the merchandise and was quoted prices. He did not buy first-quality merchandise, because the price was too high, but specified second quality. After he had made his selection, the items were listed on the seller's forms. The item numbers indicated the decoration, size, and shape, but not necessarily the quality. The orders then had to be taken to Munich to the office of the Joint Export-Import Agency (JEIA), where an agreement in the form of a memorandum or contract was drawn up, specifying primarily the terms of payment. Contracts had to be made with JEIA, because letters of credit could not be opened directly to the German manufacturer.

The witness stated that the prices were quoted by the factory and that, at some time toward the end of 1947 or 1948, the prices were increased, but he did not know whether the price increase took place before this merchandise was exported or not. All the orders herein were placed during 1947 and the beginning of 1948. The witness said that all contracts that were made up to the currency reform were made at so-called "stop-prices." To the best of his recollection, the currency reform was in 1949 and, therefore, all prices which were quoted were stop-prices.

When the merchandise arrived in the United States, the witness examined it and found that it was second quality or inferior. He explained that chinaware shrinks during the firing process; that the shrinkage is not uniform; that some pieces will be warped, and some will contain fire marks or black spots on the surface. The first quality consists of those pieces which are as perfect as possible, whereas second-quality pieces are more warped and have more spots, which have to be covered with very dark decorations.

Mr. Scholder was unable to find a copy of this particular contract, but offered a number of letters having reference to contract number 5592. A photostatic copy of this contract was then placed in evidence by the Government (defendant's collective exhibit A). The witness stated that there was nothing in the contract or in the correspondence referring to the quality of the merchandise, nor did the commercial invoices show quality.

Plaintiff also offered in evidence an affidavit of Edmund Schumann, manager of the manufacturing company, sworn to August 24, 1956.

Mr. Schumann stated that his firm classified porcelainware as 1st selection, 2d selection, 3d selection, and 4th selection, according to the number or character of defects in each piece. The first selection had the least number of defects and the fourth selection the greatest number. His firm started to offer merchandise for export in 1948 and, at that time, established prices at which the merchandise was freely offered to all purchasers for export to the United States. Prices were quoted for first quality, which included first selections, and for second quality, which did not include any of the first selection, as follows:

Openwork China—Patterns 5145/1 & 5147/1
June 1st, 1948

| | | | First quality per dozen | Second quality per dozen |
|---|---|---|---|---|
| Plate | 153 | 7″ | $2. 03 | $1. 57 |
| ″ | 153 | 8″ | 2. 90 | 2. 37 |
| ″ | 153 | 10½″ | 5. 75 | 4. 10 |
| Baskets Round | 153 | 5″ | 1. 60 | 1. 37 |
| ″ ″ | 153 | 7″ | 3. 12 | 1. 97 |
| ″ ″ | 153 | 9″ | 5. 80 | 4. 10 |
| Baskets Oval & Square | 153 | | | |
| | Size 2 | | 3. — | 2. 37 |
| | ″ 3 | | 4. — | 3. 05 |
| | ″ 4 | | 6. 05 | 3. 95 |

According to the affiant, the prices did not vary because of quantity, and the prices included packing, cartage, inland freight, and insurance to Bremerhaven. The merchandise was also offered on an ex-factory basis. Steelmasters, Inc., was the firm's first United States customer and purchased only second-quality merchandise. Sales or shipments to the United States at prices higher than those charged Steelmasters, Inc., covered merchandise of first quality, consisting of first selection porcelain, which was not included in the shipments to Steelmasters, Inc.

Irving Gross, customs examiner at the port of New York, testified that he had examined the merchandise involved herein and had caused an investigation to be made as to its value. As a result of the investigation, he advisorily appraised the merchandise at the values which were finally adopted by the appraiser. In the course of his duties, he examined merchandise shipped by the firm of Schumann & Schréider to other importers than plaintiff. Samples of such merchandise were received in evidence, and the witness stated that they were of the same style and shape as the instant merchandise. The only difference was in the flower or fruit decoration in the center. From his examination of the merchandise, the witness concluded that the quality was the same for all importations during the period. All of the merchandise received the same valuation.

A letter from Schumann & Schreider to JEIA, dated June 23, 1949, a copy of which was included in defendant's exhibit B, states that the manufacturer originally had to sell at stop-prices fixed by the German Government and that column I of the list attached showed such prices. Prices were raised when a rate of exchange with the German mark was introduced, but orders that had been entered prior thereto were executed at the old prices. The letter continues:

* * * Column I shows the stop-prices. Deliveries made to the firm Steelmaster extended up to 1948 on the basis of these stop-prices because the order placed with us called for great quantities.

Defendant's exhibit C includes a price list and a letter from Schumann & Schreider, dated October 26, 1949, containing the following:

Point 2: We have no other price lists available than the one presented to you. Regarding the merchandise delivered to the USA, no price lists are at hand inasmuch as the articles furnished were novelties that had only recently been developed. These new fashioned articles have been offered to each customer separately. These articles, so far, were neither subject to a price increase or reduction.

Point 3: * * * Of course, also deliveries have been effected with lower prices subsequent to the price increase. These deliveries were due to the fact that previously given orders had to be executed at the old prices.

The price list contains the following:

| from: | 1. 3. 47 | 1. 1. 48 | 1. 5. 48 | 1. 1. 49 | 30. 9. 49 |
|---|---|---|---|---|---|
|  | I | II | III | IV | V |
| Plates 7'' | $1. 57 | 1. 80 | 2. 03 | 2. 33 | 1.98 p. doz. |
| " 8'' | 1. 86 | 2. 15 | 2. 40 | 3. 01 | 2.56 " " |
| * * | * | * | * | * | * |
| " 10½'' | 4. 10 | 4. 90 | 5. 75 | 6. 61 | 5.61 " " |
| Basket round 5'' | 1. 37 | 1. 45 | 1. 60 | 1. 85 | 1.58 " " |
| " " 7'' | 1. 97 | 2. 50 | 3. 12 | 3. 59 | 3.06 " " |
| * * | * | * | * | * | * |
| " " 9'' | 4. 10 | 4. 90 | 5. 80 | 6. 67 | 5.67 " " |
| Basket oval 8½'' | 2. 37 | 2. 60 | 3. 00 | 3. 45 | 2.93 " " |
| " " 9½'' | 3. 02 | 3. 40 | 4. 00 | 4. 60 | 3.91 " " |
| " " 11½'' | 3. 94 | 5. 45 | 6. 05 | 6. 96 | 5.92 " " |
| * * | * | * | * | * | * |

There is also in evidence a report of Treasury Representative Knoke, dated December 10, 1956. Mr. Knoke visited the offices of Schumann & Schreider on December 5, 1956, and discussed the sale of this merchandise with Edmund Schumann. According to Mr. Schumann, Joseph Block of Steelmasters, Inc., had visited the factory and stated that he would make a sizable purchase, if the prices were right. He was shown samples and quoted prices, but found the prices somewhat high. The firm then decided that, if both "first" and "seconds" and a prewar floral design were used, it would be possible to meet Mr. Block's

price. Samples were made up and approved by Mr. Block, but it was not revealed that the merchandise was composed of both first- and second-quality goods.

On this record, plaintiff claims that the proper dutiable values of the merchandise are the prices given in Mr. Schumann's affidavit for second-quality merchandise. In this case, as in all reappraisement cases, the burden is upon the party challenging the appraised value to prove the action of the appraiser erroneous and to establish some other dutiable value as the proper one. *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593. Plaintiff is required to meet every material issue in the case; if he fails, the appraised value must stand. *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513.

A reading of the record discloses a great many discrepancies on the points at issue. According to the testimony of Mr. Scholder, plaintiff not only knew that it was receiving second-quality merchandise, but specified that quality. Mr. Schumann's affidavit states that Steelmasters, Inc., purchased only second quality and that second quality did not include any of the first selection. However, in an interview by Treasury Representative Knoke, Mr. Schumann said that the merchandise sold to plaintiff consisted of both "firsts" and "seconds" but that the manufacturer did not reveal this to the purchaser at the time. The examiner stated that the merchandise imported by plaintiff and that imported by other purchasers was of the same quality and all was appraised at the same prices.

The affidavit of Mr. Schumann contains prices for both first- and second-quality merchandise, as of June 1, 1948. It is stated that the merchandise was freely offered to all purchasers at the prices quoted and that the prices did not vary because of quantity. However, according to the letter dated June 23, 1949 (defendant's exhibit B), deliveries were made to Steelmasters, Inc., at the stop-prices, because of the great quantities ordered.

The record also includes other price lists, giving prices as of different dates: March 1, 1947, January 1, 1948, May 1, 1948, January 1, 1949, and September 30, 1949 (defendant's exhibits B and C). The orders for the merchandise involved herein were placed in 1947 or the beginning of 1948. The prices paid were the prevailing prices for 1947, as set forth in column I of the price list attached to defendant's exhibit C. Nowhere in the contract, the invoices, or the correspondence is there any notation that the merchandise was different from that covered by the price list. The statement that there were different prices for different qualities appears first in the affidavit of Edmund Schumann, executed after the appraisement of the merchandise and the commencement of this litigation. The conclusions of

the affiant are not supported by copies of contemporary price lists or evidence of sales or offers for sale at those prices.

On the contrary, the price lists attached to defendant's exhibits B and C, which were prepared in 1949, less than a year after the last exportation, show not only the prices which plaintiff paid and which were in effect at the date of purchase, but the prices prevailing on the dates of exportation. It is significant that the manufacturer stated, in 1949, that previous orders were executed at the old prices and that deliveries to Steelmasters, Inc., continued into 1948 on the basis of the stop-prices. This may be why Mr. Scholder's recollection was that the stop-prices continued until 1949. However, export value is based on the prices in effect at the time of exportation, not those in force on the date of purchase. *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, C. A. D. 192.

Plaintiff has not established that this merchandise was any different in quality from other merchandise shipped by this manufacturer to other purchasers or that there were freely offered prices to all purchasers different from those contained in the price lists, attached to defendant's exhibits B and C. The values found by the appraiser correspond to the prices on said lists which were in effect on the respective dates of exportation herein and represent the correct dutiable values of the merchandise.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of decorated vitrified chinaware, principally openwork plates and baskets, exported from Germany between July 4, 1948, and January 8, 1949.

2. That, on or about the dates of exportation herein, such or similar merchandise was not freely sold or offered for sale to all purchasers in the principal markets of Germany, in the usual wholesale quantities in the ordinary course of trade, for home consumption.

3. That, on or about the dates of exportation herein, such or similar merchandise was freely sold or offered for sale to all purchasers in the principal markets of Germany, in the usual wholesale quantities, in the ordinary course of trade, for exportation to the United States, packed ready for delivery, at the appraised unit values, less included charges for cartage, inland freight, and insurance, as stated on the respective invoices and allowed by the appraiser.

I conclude as matters of law:

1. That there was no foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, for this merchandise.

2. That the export value, as said value is defined in section 402 (d) of said tariff act, is the proper basis for the determination of the value of this merchandise.

3. That such values are the appraised values.

Judgment will be rendered accordingly.