(A. R. D. 88)

STEELMASTER, INC. v. UNITED STATES

Entry No. 762308, etc.

First Division, Appellate Term

(Decided June 13, 1958)

*Barnes, Richardson & Colburn (Hadley S. King* of counsel) for the appellant.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

WILSON, Judge: This proceeding is before us on an application for review of the decision in the case of *Steelmaster, Inc.* v. *United States,* 39 Cust. Ct. 587, Reap. Dec. 8928, in which the trial judge upheld the appraised value of certain merchandise, consisting of decorated vitrified chinaware composed principally of plates and baskets, exported from Germany between July 4, 1948, and January 8, 1949. The imported goods were entered on the basis of invoice unit values, less included charges for cartage, inland freight, and insurance. The merchandise was appraised at higher unit values, less the same included charges.

It is conceded in this case that the only issue is one of fact. As stated by the importer in its brief before the trial court:

* * * The only question presented by these appeals is one of fact, i. e., was the imported merchandise of first quality, or was it, as contended by the importer, of second quality?

Pursuing this theory of the case, counsel for the importer, in their briefs before the trial court and this court, rely upon a statement of the evidence, as they see it, and arguments based upon the alleged facts. They cite no cases at all.

It was stipulated between the parties "that neither such nor similar merchandise to that involved in these appeals to reappraisement, were freely offered for sale for home consumption in Western Germany" (R. 34). Both parties have, therefore, presented the case with the understanding that export value is the proper basis for appraisal and that the goods were appraised on that basis.

The only contention of the appellant herein is that the appraised values are those properly applicable to vitrified chinaware of the

general type here involved of the first quality, whereas the imported merchandise consisted of vitrified chinaware of second quality, which should have been appraised at lower prices. The case was submitted by stipulation upon the record as made before the trial judge and upon the briefs filed in support of and against the application under consideration. No oral arguments of counsel are before us. We must "consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser [single judge] * * *." *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, 379, T. D. 41318.

The arguments presented by the appellant evidently proceed upon the theory that the evidence of one Arthur Scholder, vice president of the importer, and the affidavit (plaintiff's exhibit 1) of Edmund Schumann, managing director of Schumann & Schreider, the exporter of the merchandise, fully establish the appellant's contentions, even though other substantial testimony deprives the Schumann affidavit and the Scholder testimony of much of their weight, and present a really more reliable picture of the situation as a whole.

When the case was originally called for trial before Judge Johnson on October 31, 1956, Mr. Scholder testified, in substance, that he had made several trips to Germany during the years 1947, 1948, and 1949. He did not state, however, as appears from the record herein, that, on at least one of these occasions, when the merchandise now before the court was contracted for, he was accompanied by Mr. Block, president of the appellant, Steelmaster, Inc. He further testified that he visited the factory of Schumann & Schreider, the German exporter, which quoted him prices on both first-quality and second-quality vitrified chinaware plates and baskets; that the price of the first quality was too high; and that he selected certain merchandise of second quality or grade, the orders for which had to be taken to the office of the Joint Export-Import Agency (JEIA) where where a contract was drafted. The witness evinced little information concerning price advances during the year 1948 or concerning the terms of the contract of purchase. When called upon, he could not produce a copy of the contract or any written documents of any sort to corroborate his oral testimony as to quality and prices. He further testified that he examined the merchandise in question upon its arrival in the United States and found it all to be of second quality. At the conclusion of Mr. Scholder's testimony on October 31, 1956, the case was adjourned and, at the time of such adjournment, Mr. Scholder, through his counsel, agreed that he would produce at the later hearing all pertinent documents of every kind which it was possible to find in the files of his company. When the case was resumed on February 27, 1947, however, he stated that he could not find a copy of the contract of purchase which had been signed by the company president,

Mr. Block; that he could not find any pricelists or any other writings, except some letters (plaintiff's collective exhibit 2). Although this correspondence covers a period from April 3, 1948, to September 13, 1948, and refers to merchandise purchased under contract 5592 (defendant's collective exhibit A), no reference is found anywhere in the correspondence to unit prices or to the quality of the merchandise involved.

The affidavit of Mr. Schumann (plaintiff's exhibit 1) was signed on the 24th of August 1956, about 8 years after the goods in question were imported. The affiant stated that his company classified its porcelainware as:

> 1st selection
> 2nd selection
> 3rd selection
> 4th selection

the grades being determined according to the character of the defects resulting from the manufacture of the merchandise. He further set forth that his company began to offer merchandise for export in 1948 and set forth certain price schedules which, he said, were in effect for first-quality, and for second-quality merchandise of the type exported to the United States as of June 1, 1948. He further set forth the dates and quantities of the shipments made from his company to Steelmasters, Inc., from June 3, 1948, to December 28, 1948, both inclusive. Mr. Schumann also stated that any sales or shipments made to the United States at prices higher than those charged Steelmasters, Inc., related to first-quality merchandise only.

If it be assumed that the affidavit of Mr. Schumann standing without attack would be entitled to the weight claimed for it by the appellant, it is of little value, when considered in connection with statements which he made to William R. Knoke, a United States Treasury representative (defendant's collective exhibit A), on December 5, 1956, and in the light of written information shown in said report. According to Mr. Knoke's report, Mr. Schumann told him that Joseph Block, president of Steelmaster, Inc., the importer, visited the factory of Schumann & Schreider in Germany and advised it that he was prepared to make sizable purchases of its merchandise, if the price were right. Upon being shown samples and upon prices being quoted, Mr. Block stated that the quotations were too high. Mr. Schumann thereupon told Mr. Block that he would review the situation with his company and advise Mr. Block later. Mr. Schumann further stated that the Schumann & Schreider merchandise did consist of both first- and second-quality goods and that, when he presented the question of the proposed Steelmaster purchases through Mr. Block to representatives of Schumann & Schreider, it was decided that if they were to mix up both first and seconds and show samples to Mr. Block, they could probably meet his prices and that,

accordingly, such a group of samples consisting of both first and second quality was displayed to Mr. Block when he returned. Mr. Schumann further stated to Mr. Knoke that the matter of quality was never discussed with Mr. Block; that the latter made no inquiry concerning quality; and that, consequently, he, Schumann, did not reveal that the merchandise was composed of both first- and second-quality articles. Reference was made by Mr. Knoke to the Schumann affidavit (plaintiff's exhibit 1) and Mr. Schumann was asked why he had stated that the merchandise was second quality when, as a matter of fact, the question of quality was not discussed between the seller and the buyer, and the quality of the goods purchased was not revealed to the buyer. His explanation was quite unsatisfactory in the face of the conflicts and inconsistencies between the affidavit and the oral statements.

Without giving full credence to Mr. Schumann's affidavit, there is nothing whatever in the record to support the appellant's contention concerning the cost of second-quality merchandise. In the light of the Treasury report (defendant's collective exhibit A), taken in connection with defendant's collective exhibit B, containing a pricelist furnished by the exporting concern to the American vice consul on November 11, 1949, we cannot see how it can be claimed that the affidavit (plaintiff's exhibit 1) should be given any substantial weight. Furthermore, even without the destruction of the evidentiary value of the affidavit by the contradictory statements made by the affiant, it appears that this affidavit would not meet the requirements of competent proof as outlined in the cases of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, and *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593.

There is, however, certain credible evidence which must not be overlooked. As testified to by Mr. Irving Gross, the examiner of the merchandise, the appraised values were advisorily recommended after a complete investigation and after he had received a pricelist from the exporter. Furthermore, Mr. Gross testified that he examined other merchandise manufactured by Schumann & Schreider and which was imported by the Chelsea Import Co. (defendant's illustrative exhibits D, E, and F); that said merchandise was exported in March, November, and December 1948, within the period covered by the importations now under consideration; and that defendant's illustrative exhibits D, E, and F were the same style number and shape number as the importations covered in the pending litigation. As stated by witness:

They were the same as to shape and being open work and as to size of plates imported by these importers. The only difference was the decal, which was either a flower or fruit. * * *

\*    \*    \*    \*    \*    \*    \*

From my examination of the merchandise, the quality seemed to be the same for all importations for all importers during that period. [R. 66.]

Mr. Gross also stated that all importations during the period were assessed upon export value of such or similar merchandise, including the merchandise under consideration, and that all the merchandise received the same valuation (R. 66–67).

It is, of course, a well-established rule, as pointed out in the decision of the trial court, that—

* * * the burden is upon the party challenging the appraised value to prove the action of the appraiser erroneous and to establish some other dutiable value as the proper one. *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593. Plaintiff is required to meet every material issue in the case; if he fails, the appraised value must stand. *United States* v. *Fisher Scientific Company*, 40 C. C. P. A. (Customs) 164, C. A. D. 513.

In the case at bar, the importer has not established that the involved merchandise was any different in quality from other merchandise shipped by the manufacturer in question to other purchasers or that at the time of exportation there were freely offered prices to all purchasers different from those at which the merchandise was appraised. Accordingly, the appellant herein (plaintiff below) has failed in its burden of proof, and the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

Based upon a consideration of the entire record before us, we find as facts:

1. That the merchandise herein involved consists of decorated vitrified chinaware, principally openwork plates and baskets, exported from Germany between July 4, 1948, and January 8, 1949.

2. That on or about the dates of exportation herein, such or similar merchandise was not freely sold or offered for sale to all purchasers in the principal markets of Germany in the usual wholesale quantities, and in the ordinary course of trade for home consumption.

3. That on or about the dates of exportation of the involved merchandise, such or similar merchandise was freely sold, or offered for sale to all purchasers in the principal markets of Germany, in the usual wholesale quantities, and in the ordinary course of trade, for exportation to the United States, packed ready for delivery, at the appraised unit values, less included charges for cartage, inland freight, and insurance, as stated on the respective invoices and allowed by the appraiser.

We, therefore, conclude as matter of law:

1. That there was no foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended, for the involved merchandise.

2. That the proper basis for the determination of the value of the merchandise herein involved is export value, as that value is defined in section 402 (d) of the Tariff Act of 1930.

3. That the export values of the merchandise in question are the appraised values.

The decision and judgment of the trial court are accordingly affirmed. Judgment will be rendered accordingly.